2010 UT 54

Dalton JAQUES; Severo Rodriguez; Elisha Delagarza; Nicholas Rodarte; Jodi Poll Holbrook; Jennifer Torrance; Melissa Thomas; Gregory Heiner; Ryan McCormick; Jennifer McCormick; Kent Ballard; and Ronda Ballard, Plaintiffs and Appellees,

v.

MIDWAY AUTO PLAZA, INC.; and Mike Riddle Inc. dba Mike Riddle Mitsubishi, Defendants and Appellants.

No. 20080985.

Supreme Court of Utah.

Sept. 24, 2010.

770

Michael V. Houtz, Jack C. Helgesen, Ogden, for plaintiffs.

Scott Powers, Heinz J. Mahler, Salt Lake City, for defendants.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This action was commenced by eleven purchasers of vehicles (Purchasers) from two car dealerships: Midway Auto Plaza and Mike Riddle Mitsubishi (Car Dealers). We granted interlocutory appeal to decide two issues. The first issue is whether section 31A–15–105(2) of the Utah Code provides a private right of action to purchasers of an insurance policy from an unauthorized insurer. This issue arose from a motion to dismiss filed by the Car Dealers arguing that the Purchasers had no such right. The district court denied the motion. The second issue is whether the district court abused its discretion in certifying several class actions.[1] The Car Dealers argue that none of the certifications meet the requirements of rule 23 of the Utah Rules of Civil Procedure, and ask us to overrule the district court's order. They argue that the classes lack commonality, typicality, and adequacy of representation and that the claims lack predominance and superiority.

¶ 2 For the reasons described below, we hold that section 31A–15–105(2) provides a private right of action and that the district court did not abuse its discretion in certifying the class actions. We therefore affirm the district court's orders regarding both these issues.

## BACKGROUND

¶ 3 On December 30, 2004, the Purchasers filed a complaint against the Car Dealers making a number of individual claims. The Purchasers later amended their complaint to include class action allegations based on three practices by the Car Dealers. These practices included charging Dealer Documentary Service Fees (doc fees), selling Vehicle Theft Protection (VTP) products, and selling Guaranteed Auto Protection (GAP) insurance. Pursuant to a stipulation between the parties, the district court ordered that the individual claims be severed from the class action claims. Thus, the only remaining claims in this case were the proposed class action claims based on the three practices of the Car Dealers. On November 14, 2005, the Purchasers filed a Class Action Second Amended Complaint including only these class action claims.

¶ 4 Five of the Purchasers' claims dealt with the Car Dealers' practice of charging doc fees. Doc fees are charged to vehicle buyers to cover the costs of securing financing, filing paperwork, licensing, and preparing documents. The Motor Vehicle Enforcement Division oversees the charging of doc fees, and has instituted several requirements

---

1. We note that granting interlocutory review of class action certification should "be the exception rather than the rule." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir.2005). Both Utah and federal case law treat interlocutory review of class action certification unfavorably. *See Houghton v. Dep't of Health*, 2008 UT 86, ¶ 14, 206 P.3d 287; *see also Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 833–35 (7th Cir.1999)(discussing when interlocutory review of class action certification is acceptable); *Manwill v. Oyler*, 11 Utah 2d 433, 361 P.2d 177, 178 (1961) (noting the general limits on granting interlocutory appeal).

In Utah, where "the matters in dispute can be finally disposed of upon a trial; or where they may become moot; or where they can, without involving any serious difficulty, abide determination in the event of an appeal after the trial," interlocutory review is undesirable. *Manwill*, 361 P.2d at 178. Because class action certification occurs early in the litigation, the "scope and contour of a class may change radically as discovery progresses." *Prado–Steiman v. Bush*, 221 F.3d 1266, 1273 (11th Cir.2000). The district court may accommodate these changes by amending the certification order any time before a decision on the merits. Utah R. Civ. P. 23(c)(1). Thus, class certification issues are often disposed of as the facts of the case are established through discovery and trial.

Under the guidelines established by the federal courts, interlocutory review of class action certification is appropriate when: (1) the denial of a class action would effectively end the case because the plaintiff's claim is too small to merit the cost of litigation; (2) granting a class action raises the stakes of the litigation and puts unreasonable pressure on the defendant to settle; or (3) there is a novel or unsettled issue of law. *Blair*, 181 F.3d at 834–35. This case falls under the third guideline. Utah case law concerning class action certification is sparse, leaving many fundamental issues unsettled; an interlocutory review of this case will help establish a number of principles underlying class action certification.

to ensure that the Car Dealers explain them to potential customers. The Purchasers' claims concerning the Car Dealers' practices in charging doc fees alleged (1) a violation of the Utah Unfair Practices Act, (2) a violation of the Utah Motor Vehicle Business Regulation Act, (3) a violation of the Uniform Commercial Code, (4) that the contracts were illegal and against public policy, and (5) unjust enrichment.

¶ 5 The Purchasers made four claims concerning the VTP products sold by the Car Dealers. These claims concerned two types of VTP products. The first, "Edge Guard," was sold by both Car Dealers. It consisted of a number etched on the windows of the vehicle that is stored in a database that can be used to help identify stolen vehicles. The second type of VTP product consisted of a starter interrupt attached to the vehicle's electrical system. The interrupt could be used to prevent the engine of a stolen vehicle from starting. This product was sold only by Midway Auto Plaza. The contracts for both of these products promised a sum of money or, in some cases, credit toward the purchase of a new car if a stolen vehicle is not recovered in a specified amount of time. The Purchasers' VTP claims alleged (1) a violation of section 31A–15–105(2) of the Utah Code, (2) a violation of the Utah Unfair Practices Act, (3) that the contracts were against public policy, and (4) that the contracts contained illusory promises. The claim that is most pertinent to this appeal is the alleged violation of section 31A–15–105(2) of the Utah Code.

¶ 6 The Purchasers made four claims concerning the GAP insurance policies sold by the Car Dealers. Similar to the VTP claims, the GAP claims included (1) a violation of section 31A–15–105(2) of the Utah Code, (2) a violation of the Utah Unfair Practices Act, (3) that the contracts were against public policy, and (4) that the contracts contained illusory promises.

¶ 7 The Purchasers filed three separate motions seeking class certification for each of the doc fee claims and several of the VTP and GAP claims. The Purchasers did not move to certify the VTP and GAP claims made under the Utah Fair Practices Act. However, they did move to certify the remainder of their claims.

¶ 8 The Car Dealers filed memoranda in opposition to class certification, as well as a motion to dismiss all the VTP and GAP claims. In their motion, the Car Dealers argued that (1) each of the Purchasers' VTP and GAP claims asserted a violation of section 31A–15–105(2) of the Utah Code, (2) section 31A–15–105(2) does not grant a private right of action, and (3) enforcement of this section falls to the Insurance Commissioner.[2] The motion to dismiss did not include the doc fee claims.

¶ 9 The district court issued an order denying the Car Dealers' motion to dismiss. It determined that section 31A–15–105(2) grants a private right of action to a policyholder. The district court also granted the Purchasers' motions for class certification. However, the class action certification order did not address every VTP and GAP claim made by the Purchasers. Instead, it addressed only the question of whether the products were sold in violation of section 31A–15–105(2). Additionally, the order did not address the doc fee claims individually. Rather, it combined them into the broader question of whether the Car Dealers' methods of charging the doc fees violated the law.

¶ 10 The Car Dealers challenge the district court's interpretation of section 31A–15–105(2) and ask for reversal of the district court's denial of the motion to dismiss. They also appeal the district court's certification of the three class actions.

## STANDARD OF REVIEW

■ ¶ 11 The interpretation of a statute is a question of law that we review for correct-

---

**2.** The Car Dealers' first argument that each of the VTP and GAP claims asserted a violation of section 31A–15–105(2) of the Utah Code is clearly incorrect. At least four claims made by the Purchasers alleged that the portions of the sales contracts concerning VTP and GAP products were against public policy and contained illusory promises. These claims are based on contract law, and not on a violation of section 31A–15–105(2) of the Utah Code. However, the district court did not address this point in its order, and we do not address it on appeal.

ness without any deference to the legal conclusions of the district court. *Green River Canal Co. v. Olds,* 2004 UT 106, ¶ 16, 110 P.3d 666.

¶ 12 The decision to certify a claim as a class action is " 'within the sound discretion of the district court.' " *Houghton v. Dep't. of Health,* 2008 UT 86, ¶ 15, 206 P.3d 287 (quoting *Richardson v. Ariz. Fuels Corp.,* 614 P.2d 636, 639 (Utah 1980)). A trial court's decision on class action status will be reversed "only when it is shown that the trial court misapplied the law or abused its discretion." *Call v. City of West Jordan,* 727 P.2d 180, 183 (Utah 1986).

## ANALYSIS

### I. THE INSURANCE CODE GRANTS A PRIVATE RIGHT OF ACTION

¶ 13 The Purchasers have brought their claims at issue in this appeal under section 31A–15–105(2) of the Utah Code. These claims survive only if section 31A–15–105(2) grants a private right of action to the Purchasers as policyholders.

¶ 14 The primary purpose of interpreting a statute " 'is to give effect to the legislature's intent.' " *LPI Servs. v. McGee,* 2009 UT 41, ¶ 11, 215 P.3d 135 (quoting *Savage v. Utah Youth Vill.,* 2004 UT 102, ¶ 18, 104 P.3d 1242). The best evidence of that intent is found in the plain language of the statute. *Davis v. Provo City Corp.,* 2008 UT 59, ¶ 13, 193 P.3d 86. To determine the meaning of the plain language, we examine the statute " 'in harmony with other statutes in the same chapter and related chapters.' " *LPI Servs.,* 2009 UT 41, ¶ 11 (quoting *Miller v. Weaver,* 2003 UT 12, ¶ 17, 66 P.3d 592); *see also R & R Indus. Park, L.L.C. v. Utah Prop. & Cas. Ins. Guar. Ass'n,* 2008 UT 80, ¶ 23, 199 P.3d 917 ("If the plain language is unambiguous then we need not look beyond it and no other interpretive tools are needed in analyzing the statute." (citation omitted)).

¶ 15 Section 31A–15–105(2) provides: "An insurance policy entered into in violation of this chapter is *voidable by the policyholder* who entered into the transaction without knowing it was illegal. The *policyholder may avoid the contract* by notice to the insurer ... and *may recover any consideration paid* under the contract." (Supp. 2010 (emphases added).)[3] This text plainly shows that the legislature intended to render a policy entered into in violation of Chapter 15 "voidable" by the policyholder. Voidable means the contract is "capable of being affirmed or rejected at the option of one of the parties." *Black's Law Dictionary* 1709 (9th ed. 2009). Section 31A–15–105(2) allows the policyholder to affirm or reject the contract if the insurance contract was "entered into in violation of [Chapter 15]." Thus, if policyholders find that they have entered into a contract with an unauthorized insurer, they may, "by notice to the insurer," void the contract and "recover any consideration paid under the contract." Utah Code Ann. § 31A–15–105(2). Having been given a right to recover the consideration paid, policyholders may enforce this right by bringing an action against the insurer in court. Thus, section 31A–15–105(2) vests in the policyholder a private right of action.

¶ 16 The foregoing conclusion is strengthened when we consider the purposes of Chapter 15 as a whole. One of the purposes of Chapter 15 is to "subject unauthorized insurers and other persons doing an insurance business in Utah to the jurisdiction of the Utah commissioner *and courts.*" *Id.* § 31A–15–101(2) (2008) (emphasis added). This language makes it clear that the right of a policyholder to void a policy under section 31A–15–105(2) and to recover the consideration paid under the contract may be protected by the courts. Thus, both the plain language of section 31A–15–105(2) and the purpose underlying Chapter 15 support our holding that a policyholder has a private right of action that may be enforced in court.

¶ 17 The Car Dealers argue that this reading of section 31A–15–101(2) is not in harmo-

---

**3.** Because there have been no substantive changes to the relevant statutes that would affect this opinion, we cite to the current versions.

ny with section 31A–2–201 of the Utah Code, which states: "The commissioner shall administer and enforce this title. . . . The commissioner shall inquire into violations of this title . . . to determine: (a) whether or not any person has violated any provision of this title; or (b) to secure information useful in the lawful administration of this title." *Id.* § 31A–2–201(1), (6) (Supp. 2010). The Car Dealers interpret this section as giving the Insurance Commissioner exclusive power to enforce violations under Title 31A. They argue that the courts may only protect the rights of the policyholder after the Commissioner has determined that a violation has occurred. We disagree.

¶ 18 The language in section 31A–2–201 does not grant the Insurance Commissioner the exclusive right to enforce Chapter 15. While the section does vest the Insurance Commissioner with the right to enforce the code, it does not say no one else may do so. Indeed, section 31A–15–101(2) plainly extends jurisdiction over persons doing insurance business not only to the Insurance Commissioner, but also to the courts. Thus, a policyholder need not wait for action by the Insurance Commissioner before commencing litigation against an insurer under Title 31A. Instead, the policyholder may give notice to the insurer and file a lawsuit to recover any consideration paid under the policy as permitted by section 31A–15–105(2).

¶ 19 The Car Dealers cite the legislative history of section 31A–15–101(2) in an attempt to convince us that the purpose of Chapter 15 is contrary to what its plain language suggests. However, this section is unambiguous. There can only be one meaning applied to the phrase, "the jurisdiction of the Utah commissioner *and courts.*" *Id.* § 31A–15–101(2) (emphasis added). Because section 31A–15–101(2) contains no ambiguity in granting jurisdiction to the courts, we need not look beyond the language of the statute.

¶ 20 Furthermore, our interpretation is supported by *Surety Underwriters v. E & C*

*Trucking, Inc.,* 2000 UT 71, 10 P.3d 338. In that case, the plaintiff brought suit against the defendant seeking to enforce an insurance contract. We found that the plaintiff, by entering into the contract when it was not authorized to do so, had violated Chapter 15. *Id.* ¶ 40. We applied section 31A–15–105(1) to render the contract unenforceable against the defendant.[4] *Id.* ¶ 41. Thus, we have previously used section 31A–15–105 as a basis for determining whether an insurer has violated Chapter 15.

¶ 21 Finally, the Car Dealers argue that allowing a party to circumvent the authority of the Utah Insurance Department by asserting regulatory claims in court would defeat the entire regulatory nature of the Insurance Code. We disagree. At most, section 31A–15–105(2) allows a party to void a contract entered into with an unauthorized insurer and obtain any consideration paid for the contract. Only the policyholder is entitled to any remedy, and it does not allow for a private cause of action for any other violation of the Insurance Code. The Car Dealers argue that, as a matter of policy, the Insurance Department possesses specialized skills and knowledge about whether an insurer is unauthorized to do business in Utah. However, we find that a district court is also capable of making that determination.

¶ 22 Thus, the plain language of section 31A–15–105(2) expressly grants a private right of action to the policyholder. We affirm the district court's holding.

## II. THE CLASS ACTIONS WERE PROPERLY CERTIFIED UNDER RULE 23

¶ 23 The criteria to be applied by the district court in certifying a class action are found in rule 23 of the Utah Rules of Civil Procedure. A class may only be certified if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the

---

4. The text of section 31A–15–105(1) provides: "An insurance contract entered into in violation of this chapter is unenforceable by, but enforceable against, the insurer. In an action against the insurer on the contract, the insured is bound by the terms of the contract as affected by this title and rules adopted under this title." (Supp. 2010).

claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Utah R. Civ. P. 23(a). These four criteria are respectively referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

¶ 24 In addition to the requirements of rule 23(a), the class action may be maintained only if it falls into one of the three categories found in rule 23(b). The district court, as requested by the Purchasers, applied rule 23(b)(3) to this case. Thus, certification is appropriate only if the district court also "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* 23(b)(3). These additional two criteria are referred to as predominance and superiority.

¶ 25 The Car Dealers argue that the district court abused its discretion in finding commonality, typicality, and adequacy of representation under rule 23(a), and in finding predominance and superiority under rule 23(b)(3). We will address each of these requirements of rule 23 below.

¶ 26 In applying the rule 23 criteria, the district court must take the substantive allegations in the complaint as true. *Shook v. El Paso Cnty.,* 386 F.3d 963, 968 (10th Cir.2004); *J.B. v. Valdez,* 186 F.3d 1280, 1290 n. 7 (10th Cir.1999). However, the court " 'need not blindly rely on conclusory allegations which parrot Rule 23.' " *Shook,* 386 F.3d at 968 (quoting *J.B.,* 186 F.3d at 1290 n. 7). While the court may consider evidence relevant to the plaintiff's claims, the court may not inquire into the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

### A. The Commonality Requirement Has Been Met

¶ 27 Commonality requires only that a single issue of fact or law be common to each class member. *J.B.,* 186 F.3d at 1288; *Ditty v. Check Rite, Ltd.,* 182 F.R.D. 639, 642 (D.Utah 1998). To have a common issue, there must be a "discrete legal question of some kind." *J.B.,* 186 F.3d at 1289. Simply asserting systematic violations of the law is not sufficient to meet the requirement of commonality, because it does not present a common question. *Id.* The district court is given wide discretion in determining commonality, "because it is 'in the best position to determine the facts of the case' " and the " 'consequences of alternative methods of resolving the issues.' " *Id.* (quoting *Boughton v. Cotter Corp.,* 65 F.3d 823, 826 (10th Cir. 1995)).

¶ 28 The district court found that commonality exists in each of the classes proposed by the Purchasers. First, for the classes arising from the Purchasers' VTP claims, the district court certified three classes defined as (1) all those who had purchased VTP products from Midway Auto Plaza, (2) all those who had purchased "Edge Guard" products from Midway Auto Plaza, and (3) all those who had purchased "Edge Guard" products from Mike Riddle Mitsubishi. The district court determined that a common question among these classes was, "whether the defendants' vehicle theft policies violate the Utah Insurance Code, and if so, which legal remedies are available?" Second, for the classes arising from the Purchasers' GAP claims, the district court certified two classes defined as (1) all those who had purchased GAP insurance from Midway Auto Plaza and (2) all those who had purchased GAP insurance from Mike Riddle Mitsubishi. The district court determined that a common question among these classes was, "whether the defendants' GAP policies violate the Utah Insurance Code, and if so, which legal remedies are available?" Third, for the classes arising from the Purchasers' doc fee claims, the district court certified two classes defined as (1) all those who had purchased a vehicle from Midway Auto Plaza and (2) all those who had purchased a vehicle from Mike Riddle Mitsubishi. The district court determined that a common question among these classes was "whether the defendant's actions violated the law and thus render the documentary fee provisions of the sales contract

invalid?"[5] Each of these questions is discrete and common among the respective class members. Therefore, we find no abuse of discretion in the district court's finding on commonality.

¶ 29 Because the district court certified the VTP and GAP class actions based only on a violation of section 31A–15–105(2) of the Utah Code, and not based on any other claim made by the Purchasers, this is the only question concerning the VTP and GAP class actions that we address on appeal. Similarly, the district court certified the doc fee claims based only on the question of whether the Car Dealers' actions violated the law, and not based on the individual claims made by the Purchasers. Therefore, this is the only question concerning the certification of the doc fee class actions that we address.

¶ 30 The Car Dealers make two arguments against the district court's findings. First, they argue that there was no common plan or scheme perpetuated by the Car Dealers against the members of the class. Second, they argue that resolution of the common questions in each action would require individual inquiry into each purchaser's claim.

¶ 31 The Car Dealers' first argument misconstrues the requirements of commonality. The district court was required to find only a common question of law or fact among each member of the class that would have to be resolved in order for any class member to recover in a claim. Utah R. Civ. P. 23(a)(2); *J.B.*, 186 F.3d at 1288. It was not required to find a common plan or scheme by the defendants. Commonality is principally concerned with the characteristics of the class, not of the defendant in a class action. 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3:13 (4th ed. 2002). As noted above, the district court found a common question for each class.

¶ 32 The second argument by the Car Dealers is that each proposed class lacks commonality because resolving the questions in each class would require inquiries into the factual circumstances of each individual purchase. The Car Dealers list possible factual differences for each claim. For instance, they point to the doc fees claims and argue that some class members may not have been overcharged, some class members may have seen an explanation of the fees prior to signing the contract, and some class members may have understood and accepted the doc fees. Likewise, they argue the claims for VTP products and GAP insurance also contain factual variances. Class members purchased different types of VTP products. Both the VTP products and GAP insurance may have had different administrators and underwriters for each purchaser. The Car Dealers argue that maintaining these classes would cause this case to "devolve into a series of individual trials on issues peculiar to each plaintiff." *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 166 (D.Kan.1996). We disagree.

¶ 33 Although there may be varying factual differences between each purchaser within each class, there still remains a common question that must be answered for any class member to recover. Concerning VTP products and GAP insurance, the district court stated "the primary consideration is whether the defendants sold the plaintiffs an insurance product at a time when the defendants did not have a license to sell insurance products. It is irrelevant whether these products had different administrators and/or different underwriters." Likewise, concerning doc fees, the district court found the common question to be, "whether the appellants' actions violate the law and thus render the documentary fee provisions of the sales contract invalid?"

¶ 34 There will often be individual factual issues in a class action. The presence of these issues, however, does not necessarily prevent a district court from finding commonality. *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D.Mass.2003); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D.Ill.1992); 4 Conte &

---

**5.** We acknowledge that class actions may be certified early in the litigation but note some concern over the broad nature of these questions. While we are not prepared to find an abuse of discretion at this point in the litigation, we note that the district court may, as discovery progresses, amend its order under rule 23(c)(1) of the Utah Rules of Civil Procedure, better tailoring the common questions to the claims made by the Purchasers.

Newberg, *supra* § 13:16. "[T]he commonality requirement has been characterized as a low hurdle easily surmounted." *Scholes,* 143 F.R.D. at 185 (internal quotation marks omitted). We do not find that the potential individual issues argued by the Car Dealers justify preventing the trial court from exercising its discretion in favor of certification at this point.

¶ 35 One reason that district courts are allowed such broad discretion is that rule 23(c)(1) of the Utah Rules of Civil Procedure grants the district court the ability to alter or amend the order of class certification before the decision on the merits. Thus, if it becomes necessary, the class action may be amended to contain subclasses to meet the factual pattern of the case. Furthermore, if it is found by the district court that the individual transactions of the class members are too varied to be categorized into subclasses, it is within the discretion of the court to decertify the class. Therefore, we hold that the district court did not abuse its discretion in finding commonality in these classes.

### B. The Typicality Requirement Has Been Met

¶ 36 "The question of typicality ... is closely related to the preceding question of commonality. A named plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Ditty,* 182 F.R.D. at 642 (alterations in original) (internal quotation marks omitted). Furthermore, "minor factual variations will not defeat the formation of the class." *Id.*

¶ 37 In the current case, the district court verified that every class has a representative with the same claims and legal theories as the other class members. Every other argument the Car Dealers make against typicality has been addressed in our discussion of commonality above. Therefore, we hold that the district court did not abuse its discretion in finding typicality.

### C. The Adequacy of Representation Requirement Has Been Met

¶ 38 The two factors that must be considered in determining whether the class representatives will fairly and adequately represent the interests of the class members are (1) "whether the [representatives] have interests antagonistic to those of the class" and (2) "the class attorney's qualifications, experience, and ability to conduct the litigation." *Id.* The first prong ensures that "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625–26, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation marks omitted). The representative's understanding of the lawsuit or the representative's character is given little weight in determining whether they are an adequate representative. *Ditty,* 182 F.R.D. at 642. This is because class representatives are "generally laypeople and they are not expected to prosecute their own action or that of the class." 1 Conte & Newberg, *supra* § 3:24. For this reason, the second prong focuses on the qualifications of the representative's counsel. *See Ditty,* 182 F.R.D. at 642–43 (finding attorney to be adequate for class representation where he had represented plaintiff classes on several occasions, shown an ability to advance the costs of the litigation on behalf of his client, and had shown adequate legal abilities); *see also Amchem,* 521 U.S. at 626 n. 20, 117 S.Ct. 2231.

¶ 39 The district court determined that the class representatives did not have interests antagonistic to those of the classes. This determination was made despite evidence that some class representatives did not fully understand what it meant to be a class representative, some neglected to list the class claim as the reason they are upset, some did not complain about being charged for the products, and some did not know what doc fees were.

¶ 40 While it appears that some of the class representatives may not have a full understanding of their lawsuit, both the representatives and the class members have an interest in adjudicating the questions certi-

fied to the class. There is no evidence in the record suggesting that in prosecuting these questions in their own claim, the representatives will not meet the interests of the class members as well. Therefore, it was not an abuse of discretion for the district court to find that the representatives did not have interests antagonistic to those of the class.

¶ 41 Because the Car Dealers concede that the representatives' attorneys are qualified, experienced, and able to conduct this litigation, we do not need to address that issue.

### D. The Predominance Requirement Has Been Met

¶ 42 Like typicality, the predominance requirement also closely resembles the commonality requirement. While commonality only requires common issues of law or fact, predominance requires that the common issues predominate over any individual issues in the action. Utah R. Civ. P. 23(b)(3). Thus, the predominance requirement is "far more demanding" than the commonality requirement. *Amchem*, 521 U.S. at 624, 117 S.Ct. 2231.

¶ 43 The district court found that the class action claims predominated in this case, because the individual claims had been severed from the lawsuit. In fact, the class action claims are the only claims disputed in this litigation. Therefore, they must predominate. It was not an abuse of discretion for the district court to find that the predominance requirement has been met.

### E. The Superiority Requirement Has Been Met

¶ 44 In determining whether superiority has been met, the district court should consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be en-

countered in the management of a class action.

Utah R. Civ. P. 23(b)(3).

¶ 45 The district court analyzed each of the four factors individually and determined that a class action would be superior to individual actions. First, it found that each class member's claim would be too small to be worthwhile to litigate separately. Second, it found that there would be little effect on competing litigation. This finding was based on the fact that the claims severed from this litigation are not based on the same issues and questions. Third, the district court found that resolution of the case in a single forum would be desirable to ensure consistent verdicts and to further judicial economy. Fourth, it found that difficulties would not likely be encountered in the management of the class action. Each of these findings is supported by the record and is within the discretion of the district court.

¶ 46 The Car Dealers argue that among the representatives, there are twenty-five other lawsuits which will proceed regardless of the decision in the class action claims, and that the Purchasers have a strong interest in pursuing the class action claims in these individual lawsuits. However, it would be extremely inefficient to require each class member to pursue the certified questions in individual actions; furthermore, it might lead to inconsistent results. Thus, the interests of concentrating these actions in a single forum outweigh the interests of requiring the plaintiffs to pursue the class action claims in their individual lawsuits.

¶ 47 Next, the Car Dealers argue that management of the class action will prove impossible. They claim that resolution of the certified questions will require individual inquiries into the particular circumstances of each class member's experience. As discussed above, the district court found that the issues were not dependent on the individual facts of each case, but that the questions were common to each class member. It was not an abuse of discretion for the district court to find that a class action would be superior to individual litigation.

## CONCLUSION

¶ 48 We hold that section 31A–15–105(2) of the Utah Code creates a private right of action that falls within the jurisdiction of the courts. Therefore, we affirm the district court's order denying the Car Dealers' motion to dismiss. We also hold that the district court's analysis in certifying the class actions was sufficiently rigorous to meet the demands of fairness and justice required by rule 23 of the Utah Rules of Civil Procedure. Therefore, the district court did not abuse its discretion, and we affirm its order certifying the class actions.

¶ 49 Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and Judge DEVER concur in Chief Justice DURHAM's opinion.

¶ 50 Justice WILKINS does not participate herein; District Judge L.A. DEVER sat.