2010 UT App 385

**CAPITAL ASSETS FINANCIAL SERVICES, Plaintiff and Appellant,**

v.

**JORDANELLE DEVELOPMENT, LLC, a Colorado limited liability company; and Bruce Riches, an individual, Defendants and Appellees.**

No. 20100159–CA.

Court of Appeals of Utah.

Dec. 23, 2010.

Bryan W. Cannon and Stephen W. Whiting, Sandy, for Appellant.

Shawn W. Potter, Heber City, for Appellees.

Before Judges ORME, VOROS, and ROTH.

## MEMORANDUM DECISION

VOROS, Judge:

¶ 1 This case involves the nonjudicial foreclosure of a third-position trust deed. The appeal asks whether "fair market value" as used in Utah's deficiency statute refers to the fair market value of the unencumbered property or the fair market value of the property as encumbered by prior liens. We conclude that it refers to the latter.

¶ 2 Defendants Jordanelle Development, LLC and Bruce Riches (collectively, Owners) owned property in Summit County, Utah. Plaintiff Capital Assets Financial Services (Lender) held a trust deed on the property. Lender's trust deed was in third position. The value of the property free of all encumbrances was approximately $2 million.[1] Liens senior to Lender's trust deed secured debt totaling $1.1 million; Lender's trust deed secured a debt of $1.5 million. Owners defaulted, and Lender conducted a nonjudicial foreclosure.

¶ 3 Lender bought the property at the trustee's sale, making a credit bid of $1 million. Lender then sought a deficiency judgment against Owners for $500,000, plus $1,000 in fees and costs. This amount represented the total amount owed Lender less the $1 million trustee's sale purchase price. Owners filed a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure, contending that they owed no deficiency because the property's unencumbered fair market value of $2 million exceeded the amount owed Lender. The district court agreed with Owners and entered an order of dismissal. Lender appeals.

¶ 4 Lender challenges the district court's grant of Owner's motion to dismiss, arguing that prior encumbrances should be

---

1. All dollar amounts are approximate. They have been rounded for ease of reading.

considered in assessing the fair market value of real property for purposes of calculating a deficiency judgment for a nonjudicial foreclosure. "The granting of a motion to dismiss presents a question of law that we review for correctness." *Daniels v. Gamma West Brachytherapy, LLC,* 2009 UT 66, ¶ 46, 221 P.3d 256 (internal quotation marks omitted). "A district court should grant a motion to dismiss only when, assuming the truth of the allegations in the complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled to relief." *Brown v. Division of Water Rights,* 2010 UT 14, ¶ 10, 228 P.3d 747.

■ ¶ 5 The issue on appeal requires us to interpret the deficiency statute. "The interpretation of a statute is a question of law that we review for correctness without any deference to the legal conclusions of the district court." *Jaques v. Midway Auto Plaza, Inc.,* 2010 UT 54, ¶ 11, 240 P.3d 769. "The primary purpose of interpreting a statute is to give effect to the legislature's intent." *Id.* ¶ 14 (internal quotation marks omitted). "The best evidence of that intent is found in the plain language of the statute." *Id.* "To determine the meaning of the plain language, we examine the statute in harmony with other statutes in the same chapter and related chapters." *Id.* (internal quotation marks omitted).

■ ¶ 6 The applicable deficiency statute limits the deficiency judgment obtained after a nonjudicial foreclosure sale to the amount by which the total secured indebtedness exceeds the fair market value of the property:

At any time within three months after any sale of property under a trust deed . . ., an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in that action the complaint shall set forth the entire amount of the indebtedness that was secured by the trust deed, the amount for which the property was sold, and the fair market value of the property at the date of sale. Before rendering judgment, the court shall find the fair market value of the property at the date of sale. *The court may not render judgment for more than the amount by which the amount of the indebtedness with interest, costs, and expenses of sale, including trustee's and attorney's fees, exceeds the fair market value of the property as of the date of the sale.*

Utah Code Ann. § 57–1–32 (2010) (emphasis added); *see also City Consumer Servs., Inc. v. Peters,* 815 P.2d 234, 238 (Utah 1991) ("[A] deficiency judgment after the sale of the security is limited to the amount by which the amount of the indebtedness exceeds the fair market value of the security foreclosed on at the time of foreclosure.").

¶ 7 The meaning of the term "fair market value" is well settled. It is "the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." Utah Code Ann. § 59–2–102 (2008); *see also Utah Dep't of Transp. v. Rayco Corp.,* 599 P.2d 481, 489 (Utah 1979) ("The accepted formula for determining fair market value is what would a purchaser willing to buy, but not required to do so, pay; and what would a seller willing to sell, but not required to do, ask.").

■ ¶ 8 As stated, section 57–1–32 limits the deficiency judgment recoverable after a trustee's sale to "the amount by which the amount of the indebtedness with interest, costs, and expenses of sale, including trustee's and attorney's fees, exceeds the fair market value of the property as of the date of the sale." Utah Code Ann. § 57–1–32. The purpose of this provision " 'is to protect the debtor, who in a non-judicial foreclosure has no right of redemption, from a creditor who could purchase the property at the sale for a low price and then hold the debtor liable for a large deficiency.' " *City Consumer Servs., Inc.,* 815 P.2d at 238 (quoting *First Sec. Bank of Utah, N.A. v. Felger,* 658 F.Supp. 175, 183 (D.Utah 1987)); *see also Machock v. Fink,* 2006 UT 30, ¶ 26, 137 P.3d 779 (stating that a primary purpose of section 57–1–32 is "to prevent the creditor from purchasing the property for below market value at the trustee's sale and then suing the debtor or guarantor for a large deficiency"). Its purpose, in other words, is to protect

debtors from creditors who might be tempted to inflate their deficiency judgment by bidding less at the trustee's sale than "the amount ... a willing buyer ... having reasonable knowledge of the relevant facts," *see* Utah Code Ann. § 59–2–102, would be willing to pay. The question, then, is what a willing, knowledgeable buyer would be willing to pay for property sold at a trustee's sale.

¶ 9 Such a buyer would be aware of any prior encumbrances. This buyer would also be aware that, at the conclusion of the sale, the trustee would convey title to the property subject to any such encumbrances. *See* Utah Code Ann. § 57–1–28(3) (2010) (determining that the trustee's deed conveys "all right, title, interest, and claim of the trustor and the trustor's successors in interest and of all persons claiming by, through, or under them, in and to the property sold"); *Machock,* 2006 UT 30, ¶ 3, 137 P.3d 779 (noting that purchaser at trustee's sale pursuant to second trust deed took title subject to first priority trust deed); *cf.* 55 Am.Jur.2d *Mortgages* § 808 (1996) ("One who purchases at a mortgage-foreclosure sale" takes "subject to [a] prior mortgage."). This buyer would thus calculate his bid based on the value of the property as encumbered. Therefore, "the fair market value of the property at the date of sale," *see* Utah Code Ann. § 57–1–32, must refer to the actual fair market value of the property subject to any prior liens, rather than to some hypothetical fair market value calculated as if the property were free of liens.

¶ 10 This reading is consistent with the Utah Supreme Court's decision in *Machock v. Fink,* 2006 UT 30, 137 P.3d 779. In that case, Machock made a loan to Harmer, guaranteed by Fink and secured by a junior lien on Harmer's real property. *See id.* ¶ 2. A senior lien on the property was held by Brighton Bank. *See id.* ¶ 3. The question on appeal involved Machock's rights vis-a-vis guarantor Fink. *See id.* ¶ 9. But in the course of resolving that issue, the court made clear that it reads "fair market value" as used in the deficiency statute to refer to the

fair market value of the subject property as encumbered by prior liens:

> Utah Code section 57–1–32 requires that the debt be offset by "the fair market value of the property as of the date of the sale." The property in this case is the Harmer property as encumbered by the Brighton Bank trust deed. Thus, although an unencumbered Harmer property may have had a substantial market value, the encumbered Harmer property at issue necessarily had a lower fair market value.

*Id.* ¶ 27 n. 2.

¶ 11 In sum, section 57–1–32's reference to "the fair market value of the property at the date of sale" means the fair market value of the property as encumbered by any senior encumbrances as of the date of sale. The ruling of the district court is therefore reversed and the case remanded for further proceedings consistent with this decision.[2]

¶ 12 WE CONCUR: GREGORY K. ORME and STEPHEN L. ROTH, Judges.

---

2. As the prevailing party on appeal did not seek an award of attorney fees, we award none. *See*    Utah R.App. P. 24(a)(9).