2011 UT 7

**In the Matter of the IRREVOCABLE JACK W. KUNKLER TRUST A.**

**William Kunkler, Plaintiff and Appellant,**

v.

**Key Bank, Defendant and Appellee.**

No. 20090514.

Supreme Court of Utah.

Jan. 21, 2011.

Michael A. Jensen, Alexander Dushku, Justin W. Starr, Salt Lake City, for plaintiff.

Douglas K. Cummings, Thomas B. Price, Salt Lake City, for defendant.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This appeal is from a district court order denying as untimely a demand for jury trial on the issue of trustee fees under Utah Rule of Civil Procedure 38. We conclude that the demand was timely, and therefore reverse and remand.

## BACKGROUND

¶ 2 The Irrevocable Jack W. Kunkler Trust A (the Trust) was established on June 20, 1983. The Trust requires investment in "raw undeveloped ground," which "must be situated in Salt Lake County." In particular, the Trust calls for decennial land sales of "between 25% and 30% (in value) of the ground which [the Trust] owns."

¶ 3 The Trust provides for two trustee positions. The Class I Trustee is responsible for managing and investing Trust funds. The original Class I Trustee was Commercial Security Bank of Utah; KeyBank later assumed the role of Class I Trustee through acquisition. The Class II Trustee's responsibilities depend on who occupies the position. Under the terms of the Trust, the original named Class II Trustee, William B. Wray, Jr., had "complete discretion" over the selection of land for the decennial land sales. Upon Mr. Wray's departure from the position of Class II Trustee, however, the Class I Trustee would permanently inherit that responsibility.

¶4 In accordance with the Trust, Mr. Wray—acting as Class II Trustee—began work in 2005 on a sale of two Trust properties together worth over $46 million. The Trust entered into a Purchase and Sale Agreement for the two land parcels on November 30, 2005, with Mr. Wray signing as Class II Trustee and KeyBank signing as Class I Trustee. Mr. Wray had notified the Trust of his intent to resign as Class II Trustee on October 28, 2005, but Mr. Wray's resignation did not become effective until the end of January 2006. After Mr. Wray's resignation, KeyBank assumed his land-sale responsibilities and the appellant William Kunkler was elected the new Class II Trustee.

¶5 Under the terms of the Purchase and Sale Agreement, the first land parcel was sold on July 14, 2006, and the second sale occurred on June 19, 2007. In conjunction with each of the two land sales, KeyBank conducted tax-free exchanges pursuant to section 1031 of the Internal Revenue Code, which permits the deferral of capital gains taxes. The original terms of the Trust contemplated such tax-free exchanges. KeyBank completed the final tax-free exchange on December 11, 2007.

¶6 The present litigation began on March 2, 2007, when KeyBank filed a petition to modify the Trust. KeyBank's petition primarily sought to expand the Trust's scope of permissible land purchases to include both developed land and land outside Salt Lake County. On May 9, 2007, Mr. Kunkler filed a Petition to Remove Key Bank as Trustee and Objections to Key Bank's Petition to Amend the Trust. The litigation slowly advanced on both issues—amending the Trust and compelling KeyBank's removal—throughout the remainder of 2007.

¶7 On February 13, 2008, KeyBank filed a Motion to Resign as Class I Trustee and to Appoint Successor Trustee. As part of this motion, KeyBank for the first time presented its fee request to the court.[1] The Trust provides that for sales of real property, the fees are as follows: "Improved, not to exceed 6%. Unimproved, not to exceed 10%. If a broker is employed—to a maximum of 3%. Minimum, $50.00." KeyBank requested the full 10 percent—amounting to over $4.7 million, "the maximum allowable by the Trust"—in its motion.[2]

¶8 Mr. Kunkler vigorously opposed Key-Bank's fee request. On February 25, 2008, he filed a Memorandum in Opposition to KeyBank's motion. This memorandum outlined Mr. Kunkler's primary argument against KeyBank's fee request: Mr. Wray's prior successful efforts in negotiating the Purchase and Sale Agreement minimized or negated KeyBank's right to claim trustee fees for the land sales. Significantly, Mr. Kunkler's filing highlighted that the issue of the amount of trustee fees owed KeyBank was in dispute and that the language of the Trust provided for fees "up to 10%" rather than guaranteeing a specific amount. At a February 27, 2008 hearing, Mr. Kunkler for the first time indicated his desire for a jury trial on the issue of trustee fees. The next day, Mr. Kunkler filed a Jury Demand and Request to Designate This Case as a Jury Action.

¶9 On March 31, 2008, the district court denied Mr. Kunkler's jury demand as not timely filed under Utah Rule of Civil Procedure 38.[3] The district court focused on the

---

1. KeyBank mailed a letter to the Trust beneficiaries on February 8, 2008, notifying them of its intention to request fees from the district court. On the record, this appears to be the first time that Mr. Kunkler and the Trust beneficiaries learned of the amount KeyBank would be seeking in trustee fees; an earlier letter mailed January 23, 2008, had suggested that KeyBank would be requesting fees on the order of two hundred thousand dollars.

2. KeyBank acknowledged in its motion that "the industry standard in and around Salt Lake County for payment of a broker of a commercial real property transaction is 6%," but justified its request for the full 10 percent by noting that Key-Bank "performed the broker's duties as well as its own." In later testimony, however, a Key-Bank employee suggested that KeyBank did less work in the Trust land sales than is generally required when a broker is involved. KeyBank later reduced its fee request to 6 percent of the sale value "in order to conform to the local industry standards and as a sign of KeyBank's reasonableness to assist in a resolution of this matter."

3. The district court did not dispute Mr. Kunkler's underlying right to a jury trial, but instead focused on whether Mr. Kunkler's jury demand

requirement that a jury demand be "not later than 10 days after the service of the last *pleading* directed to such issue." Utah R. Civ. P. 38(b) (emphasis added). Importantly, the district court determined that the last pleading directed to the issue of KeyBank's trustee fee request was Mr. Kunkler's May 9, 2007 petition to remove KeyBank as Class I Trustee. In denying Mr. Kunkler's jury demand, the district court concluded that

> the Class II Trustee . . . could not reasonably have contemplated that Key Bank would be replaced without payment of compensation earned for services rendered during the time it administered the Trust. Therefore, the petition to remove Key Bank as Class I Trustee implicitly included within it the administration fees to which Key Bank would be entitled, and the opposition thereto was "the last pleading addressed to such issue" under [rule 38(b) ].

Shortly after this district court ruling, on April 21, 2008, Mr. Kunkler filed a Motion to Construe Key Bank's Motion for Fees as a "Petition," or in the Alternative, to Strike the Motion and Require Key Bank to File a Petition. Mr. Kunkler also had filed a separate Petition to Review Trustee's Fees. KeyBank in response filed a Motion to Strike Class II Trustee's Petition and a motion opposing Mr. Kunkler's April 21, 2008 motion.

¶ 10 On July 8, 2008, the district court denied Mr. Kunkler's remaining jury-related filings. The district court granted Key-Bank's motion to strike Mr. Kunkler's new petition, holding that the existing litigation encompassed that petition's request to review trustee fees. Relying exclusively on its March 31, 2008 ruling, the district court also denied Mr. Kunkler's April 21, 2008 motion.

¶ 11 Having rejected Mr. Kunkler's efforts to secure a jury trial,[4] the district court proceeded to hold an evidentiary hearing on the amount of trustee fees owed KeyBank. After the two-day hearing, the district court issued its Findings of Fact and Conclusions of Law, in which it awarded KeyBank a fee equal to 6 percent of the value of the land sales.[5] The district court later awarded Key-Bank an additional $321,344.75 in attorney fees.

¶ 12 Mr. Kunkler timely appealed all relevant district court rulings and orders.[6] We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j) (Supp.2010).

## STANDARD OF REVIEW

¶ 13 The district court's interpretations of Utah statutes and rules of procedure are questions of law reviewed for correctness. *Jaques v. Midway Auto Plaza, Inc.*, 2010 UT 54, ¶ 11, 240 P.3d 769; *Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 10, 238 P.3d 1035. The district court's characterization of a party's filing is also a legal conclusion, "which we review for correctness."[7] *Roark v. Crabtree*, 893 P.2d

---

was timely. At oral argument before this court, KeyBank questioned Mr. Kunkler's right to a jury, but this argument did not appear in any of KeyBank's previous court filings or its brief before this court. We therefore proceed on the assumption that Mr. Kunkler had a right to a jury, as long as he complied with rule 38 in making his jury demand.

4. Following the July 8, 2008 Decision and Order, Mr. Kunkler sought to have the district court reconsider its ruling. The district court denied that motion as well.

5. On appeal, Mr. Kunkler also challenges one of the district court's conclusions of law. Because we vacate the district court's denial of the jury demand, all subsequent proceedings—including the order containing the contested conclusion of law—are vacated as well. As a result, we need not reach the merits of Mr. Kunkler's argument on this point.

6. On appeal, Mr. Kunkler also contests the district court's decision to deny him discovery during court-ordered mediation. Both parties acknowledged in briefs before this court that this issue is now moot, and neither party raised this issue during oral arguments before this court. Therefore, we do not reach this issue, although we note that pursuant to Utah Rule of Court-Annexed Alternative Dispute Resolution 101(f), "[d]iscovery may proceed during the pendency of the mediation proceedings, except as stipulated by the parties."

7. KeyBank is correct that "the granting or denial of a jury trial, in the absence of proper procedural requirements, is within the sound discretion of the trial court." *James Mfg. Co. v. Wilson*, 15 Utah 2d 210, 390 P.2d 127, 128 (1964); *see also Pete v. Youngblood*, 2006 UT App 303, ¶ 9, 141 P.3d 629 ("We will not overturn the trial court's decision to deny an untimely jury demand absent an abuse of discretion."). However, in this case

1058, 1061 (Utah 1995); *see also Due S., Inc. v. Dep't of Alcoholic Beverage Control,* 2008 UT 71, ¶ 11, 197 P.3d 82.

## ANALYSIS

 ¶ 14 Judicial supervision of trust administration is governed by Utah Code section 75–7–201. That section provides in pertinent part:

(1)(a) The court has exclusive jurisdiction of proceedings initiated by interested parties concerning the internal affairs of trusts.

. . . .

(2)(b) The . . . payment of trustee's fees . . . and other aspects of the administration of a trust shall proceed expeditiously consistent with the terms of the trust, free of judicial intervention and without order, approval or other action of any court, subject to the jurisdiction of the court as invoked by interested parties or as otherwise exercised as provided by law.

Utah Code Ann. § 75–7–201 (Supp.2010). In interpreting this section, "[w]e look first to the plain language," *Berneau v. Martino,* 2009 UT 87, ¶ 12, 223 P.3d 1128, "and give effect to that language unless it is ambiguous," *Salt Lake Cnty. v. Holliday Water Co.,* 2010 UT 45, ¶ 27, 234 P.3d 1105.

¶ 15 Section 75–7–201 by its plain language instructs courts to restrict their supervision of trust administration to only those issues raised by interested parties. In other words, in order for the court to have jurisdiction over an aspect of trust administration, an interested party must invoke the court's jurisdiction by pleading. This principle flows from section 75–7–201(2)(b)'s requirement

that unless "the jurisdiction of the court [is] invoked by interested parties," trust administration "shall proceed expeditiously consistent with the terms of the trust, free of judicial intervention."

¶ 16 In this case, the district court erred in holding that the issue of trustee fees arose prior to KeyBank's February 13, 2008 motion to resign. The earlier pleadings did not place the amount of KeyBank's fees into dispute, nor could they—the second land sale did not occur until June 19, 2007, after all original pleadings had been filed. KeyBank's February 13, 2008 motion to resign was the first judicial filing indicating a specific amount KeyBank would be claiming as trustee fees under the Trust's terms. Under Utah law, KeyBank was within its authority as a trustee to "pay . . . compensation of the trustee." Utah Code Ann. § 75–7–814(1)(*o* ). In order to obtain judicial supervision over the award of trustee fees, an interested party had to explicitly invoke the court's jurisdiction. Otherwise, absent challenge to KeyBank's claimed trustee fee, the district court would lack authority under section 75–7–201 to supervise the award of trustee fees.[8]

¶ 17 KeyBank's February 13, 2008 motion to resign therefore injected a new issue into the dispute between KeyBank and Mr. Kunkler.[9] Consequently, the district court should have granted Mr. Kunkler's April 21, 2008 motion to either construe KeyBank's motion as a petition or strike KeyBank's motion entirely. Had the district court construed KeyBank's motion to resign as a petition, then Mr. Kunkler's February 28, 2008 jury demand would have been timely. Alternatively, had the district court struck Key-

---

the issue is whether the district court correctly interpreted the Utah Rules of Civil Procedure and the Utah Code in assessing the timeliness of Mr. Kunkler's jury demand.

8. This reading of section 75–7–201 comports with the guidance provided in the Uniform Trust Code, which the legislature adopted by enacting the Utah Uniform Trust Code, 2004 Utah Laws 89. As noted above, under Utah Code section 75–7–814(1)(*o* ) a trustee is authorized to "pay . . . compensation of the trustee." The comments to the Uniform Trust Code note that "[section 75–7–814(1)(*o* )] grants the trustee authority to fix and pay its compensation without the ne-

cessity of prior court review, subject to the right of a beneficiary to object to the compensation in a *later judicial proceeding.*" Unif. Trust Code § 708 cmt. (2005) (emphasis added).

9. Indeed, Mr. Kunkler argued with some force in his brief and oral argument that KeyBank's motion to resign not only injected a new issue into the dispute, but entirely mooted the previous controversy. Although we do not reach the mootness argument directly, we note that this argument further supports the conclusion that KeyBank's motion to resign injected a new issue into the existing proceedings.

Bank's motion as improperly injecting a new issue into the proceedings via motion, then the district court would have lacked jurisdiction over the amount of trustee fees—although Mr. Kunkler's March 19, 2008 petition would have properly placed the issue before the court.

¶ 18 As a result, we vacate the district court's July 8, 2008 Decision and Order and all subsequent proceedings, including the district court's January 13, 2009 Findings of Fact and Conclusions of Law. In the interest of judicial economy, we direct the district court to treat KeyBank's motion to resign as a petition invoking the court's jurisdiction on the issue of trustee fees, and to allow the litigation to proceed from that point. Mr. Kunkler's jury demand is therefore timely and the district court should proceed accordingly upon remand.

## CONCLUSION

¶ 19 Under Utah Code section 75–7–201, a court's jurisdiction to supervise the administration of a trust is subject to the invocation of that jurisdiction by the pleading of an interested party. When KeyBank filed its motion to resign as trustee, it improperly injected a new issue by motion—rather than by petition—into the proceedings. Accordingly, we vacate the district court's July 8, 2008 Decision and Order and subsequent proceedings, grant Mr. Kunkler's motion to construe KeyBank's motion to resign as a petition, recognize that Mr. Kunkler's jury demand was timely, and remand for proceedings consistent with this opinion.

¶ 20 Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and Justice LEE concur in Chief Justice DURHAM's opinion.