2013 UT App 27

# THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ADOPTION
OF R.M., A MINOR.

L.M.,

*Appellant,*

*v.*

J.B. AND A.B.,

*Appellees.*

Opinion
No. 20120006-CA
Filed January 31, 2013

Second District, Farmington Department
The Honorable David M. Connors
No. 102700102

J. Keven Hofeling, Attorney for Appellant
Victoria Cramer, Attorney for Appellees

JUDGE JAMES Z. DAVIS authored this Opinion,
in which JUDGES GREGORY K. ORME and
WILLIAM A. THORNE JR. concurred.

DAVIS, Judge:

¶1     This case is before the court on interlocutory appeal from the trial court's November 23, 2011 Order determining that L.M. (Father) was not required to consent to the adoption of his child, R.M. (Child), by J.B. (Stepfather). We reverse and remand.

BACKGROUND

¶2     Father and A.B. (Mother) are the parents of Child, who was born in July 2002. Father and Mother lived together until Child was six months old but were never married. Father was listed on Child's birth certificate, and both parents executed a voluntary declaration of paternity recognizing Father as Child's father. Understandably, given these facts, the parties did not initiate a paternity case at that time.[1]

¶3     Mother married Stepfather on October 19, 2004. On July 20, 2010, when Child was eight years old, Mother and Stepfather filed a Verified Complaint for Adoption and to Terminate Parental Rights of the Natural Father. Father failed to file an answer, and the trial court entered a Decree of Adoption on September 7, 2010. Father filed a Motion to Set Aside Default Judgment and Memorandum of Authority on October 19, 2010. The trial court set aside the decree on the basis that Father was not provided sufficient advance notice of the hearing. However, at a hearing on April 22, 2011, the trial court determined that Father's filing of a declaration of paternity was insufficient to establish his right to consent to Child's adoption. The trial court did not address Father's co-equal status with Mother on the birth certificate but explained that an unmarried biological father must comply with Utah Code section 78B-6-120(1)(f) by establishing compliance with sections 78B-6-121 and 78B-6-122 (the paternity provisions), regardless of whether he filed a declaration of paternity, in order for his consent to adoption to be required. *See generally* Utah Code Ann. §§ 78B-6-120 to -122 (LexisNexis 2012).[2] The trial court granted Father leave to file an

---

1. Apparently, Father has since filed a paternity action, but the details of that action are not contained in the record for this case.

2. Because substantive amendments to the relevant provisions are not material to the issues on appeal, we cite the current version of the Utah Code for the reader's convenience.

interlocutory appeal and stayed the adoption and paternity actions pending the outcome of the appeal.

ISSUE AND STANDARD OF REVIEW

¶4     Father argues that the trial court erred in interpreting section 78B-6-120(1) as requiring an unmarried biological father who files a declaration of paternity to also establish compliance with the paternity provisions. "The interpretation of a statute is a question of law that we review for correctness without any deference to the legal conclusions of the district court." *Jaques v. Midway Auto Plaza, Inc.*, 2010 UT 54, ¶ 11, 240 P.3d 769.

ANALYSIS

¶5     Utah Code section 78B-6-120(1) identifies seven classes of individuals who must consent to an adoption: (a) the adoptee if over twelve years old; (b) a presumptive or adoptive father; (c) the mother; (d) a biological parent who has been adjudicated as such prior to the mother's relinquishment; (e) a biological parent who has filed a declaration of paternity; (f) an unmarried biological father[3] who has complied with the paternity provisions; and (g) an

---

3. The term "unmarried biological father" is used only in subsection (f), while subsections (d) and (e) use the more general term "biological parent," which is not defined for the purposes of Title 78B, Chapter 6. *See* Utah Code Ann. § 78B-6-103(24) (LexisNexis 2012) (defining the term "unmarried biological father" as "a person who . . . is the biological father of a child[] and was not married to the biological mother of the child . . . at the time of the child's conception or birth" but not defining the term "biological parent"). However, given that all married biological fathers are presumptive fathers, *see id.* § 78B-15-204, whose consent is required under subsection (b), *see id.* § 78B-6-120(1)(b), and that the consent

(continued...)

agency to whom the child has been relinquished.[4] *See* Utah Code Ann. § 78B-6-120(1). Father argues that because he filed a declaration of paternity, which was signed by Mother, his consent to

---

3. (...continued)
of all biological mothers is required under subsection (c), *see id.* § 78B-6-120(1)(c), we do not know who other than an "unmarried biological father" could possibly be described by the term "biological parent" as that term is used in subsections (d) and (e). Thus, we consider subsections (d), (e), and (f) to all refer equally to "unmarried biological fathers."

4. A similar list is contained in Utah Code section 78B-6-110, which identifies the individuals entitled to notice of an adoption proceeding. Mother and Stepfather point out that while this list includes unmarried biological fathers who comply with the paternity provisions, it does not separately identify unmarried biological fathers who file a declaration of paternity. This is not exactly true. Section 78B-6-110 states that "any person who, prior to the time the mother executes her consent for adoption or relinquishes the child for adoption, is recorded on the birth certificate as the child's father, with the knowledge and consent of the mother" is entitled to notice. Utah Code Ann. § 78B-6-110(2)(f) (LexisNexis 2012). Utah Code section 78B-15-302(7) further provides that a "declaration of paternity shall become an amendment to the original birth certificate." *Id.* § 78B-15-302(7). Thus, an unmarried biological father who files a declaration of paternity is at least arguably entitled to notice of an adoption proceeding as the equivalent of a father listed on the birth certificate. In any event, whether an individual is entitled to notice is not necessarily determinative of whether that individual's consent is required for the adoption. *See id.* § 78B-6-110(3)(a) & amend. notes (explaining that "[t]he 2009 amendment, effective May 12, 2009, substituted 'notice' for 'notice and consent' in the introductory language of (3)(a)," which discusses the steps an unmarried biological father must take to preserve his right to notice).

Child's adoption is required under subsection (e). Mother and Stepfather maintain that an unmarried biological father who files a declaration of paternity under subsection (e) must also comply with the paternity provisions under subsection (f) in order for his consent to be required. The trial court agreed with Mother and Stepfather and determined that the filing of a declaration of paternity alone is insufficient to give a biological father the right to consent to an adoption if he has not also complied with the paternity provisions.

¶6      Subsection (f) is worded in such a way as to suggest that compliance with the paternity provisions is the exclusive means for an unmarried biological father, such as Father, to establish his right to consent to adoption: "[C]onsent to adoption of a child . . . is required from . . . an unmarried biological father of an adoptee, *only* if he fully and strictly complies with the [paternity provisions.]" *Id.* § 78B-6-120(1)(f) (emphasis added). "Because we assume that the legislature used each term in the statute advisedly, we read the statute's words literally unless such a reading is unreasonably confused or inoperable." *Paar v. Stubbs*, 2005 UT App 310, ¶ 6, 117 P.3d 1079 (citation and internal quotation marks omitted). Nevertheless, we must "interpret[] statutes to give meaning to all parts, and avoid[] rendering portions of the statute superfluous." *Id.* (alterations in original) (citation and internal quotation marks omitted). Here, reading literally the language of subsection (f) that an unmarried biological father's consent is required *only* if he complies with the paternity provisions leads to a "confused or inoperable" result, *see id.* (citation and internal quotation marks omitted), in light of the rest of section 78B-6-120(1), to which we must also give meaning.

¶7      It is clear when reading section 78B-6-120(1) in its entirety that there are, in fact, three different ways for an unmarried biological father to obtain the right to consent to an adoption: (1) he may be adjudicated as the child's father, (2) he may file a declaration of paternity, or (3) he may demonstrate compliance with the paternity provisions. *See* Utah Code Ann. § 78B-6-120(1)(d)–(f). To

read the statute any other way would render subsections (d) and (e) superfluous.[5] Furthermore, given the structure of section 78B-6-120(1), identifying seven distinct classes of individuals entitled to consent, it would be illogical to declare that certain individuals must actually fall into more than one category in order for their consent to be required, while other individuals must meet the requirements of only one category.[6]

¶8    Mother and Stepfather assert that subsection (f) would be rendered meaningless if an unmarried biological father could establish his paternity and thus his right to consent by merely filing a declaration of paternity. As they put it, "[i]f all an unmarried biological father has to do is to file a voluntary declaration of

---

5. While we acknowledge that an unmarried biological father who falls under subsection (d) by virtue of having been adjudicated as the child's father will often have complied with the paternity provisions as the means of obtaining that adjudication, this will not always be the case. For example, the mother and unmarried biological father might stipulate to an order of paternity without the father actually demonstrating such compliance to the court. *See, e.g.*, *LaChance v. Richman*, 2011 UT App 40, ¶ 6, 248 P.3d 1020 (stating that the trial court had entered a stipulated "Decree of Paternity, Parent-Time, and Child Support" in the case); *Nelson v. Sweazey*, 2005 UT App 126U, para 2 (mem.) (per curiam) ("The parties stipulated to entry of a judgment of paternity . . . .").

6. Mother and Stepfather cite recent cases addressing the requirement that an unmarried biological father strictly comply with the paternity provisions in order to perfect his right to consent to adoption. *See, e.g.*, *In re Adoption of Baby B.*, 2012 UT 35; *In re Adoption of T.B.*, 2010 UT 42, 232 P.3d 1026; *In re Adoption of I.K.*, 2009 UT 70, 220 P.3d 464. However, as Mother and Stepfather acknowledge, none of these cases dealt with biological fathers who had filed declarations of paternity, much less fathers listed as such on the child's birth certificate. They are therefore not dispositive of the issue at hand.

paternity . . . , then why would he go through the trouble of 'fully and strictly' complying with [the paternity provisions] . . . ?" The answer is that not all unmarried biological fathers will be able to file a declaration of paternity because such a declaration "must . . . be signed by the birth mother," Utah Code Ann. § 78B-15-302(1)(c) (LexisNexis 2012). "[A] valid declaration of paternity filed with the Office of Vital Records is equivalent to a legal finding of paternity of a child and confers upon the declarant father all of the rights and duties of a parent."[7] *Id.* § 78B-15-305(1); *see also In re S.H.*, 2005 UT App 324, ¶ 15, 119 P.3d 309 ("For the purposes of establishing paternity, a voluntary declaration of paternity, duly signed and filed, has the same effect as a judicial determination of paternity."). Given the legal effect of such a declaration, it cannot be filed by the father unilaterally. Thus, while filing a declaration of paternity is certainly the simpler option, and was, as previously noted, the option exercised by Father and Mother in this case, that option is not available to all unmarried biological fathers. If the birth mother declines to acknowledge the unmarried biological father's paternity and refuses to sign the declaration of paternity, he will have to comply with the paternity provisions in order for his consent to be required. Thus, the fact that the paternity provisions are more

---

7. Mother and Stepfather attempt to downplay the significance of this provision by asserting that the "the primary purpose of [a] declaration of paternity is to make sure the child's mother is receiving child support rather than to grant an unmarried biological father certain rights." In support, they point out that other provisions within the same section of the statute address financial support for the child and the mother rather than the specific rights of the father. *See* Utah Code Ann. § 78B-15-305(2) (LexisNexis 2012). However, this assertion ignores the plain language of the statute, which states that "a valid declaration of paternity . . . confers upon the declarant father all of the *rights* and duties of a parent." *Id.* § 78B-15-305(1) (emphasis added). Furthermore, we can see no logic in the position that a father could be subject to the liabilities of parenthood by virtue of a declaration of paternity and yet be denied the rights of a parent.

demanding does not foreclose the possibility that an unmarried biological father could acquire the right to consent by simply filing a declaration of paternity.

CONCLUSION

¶9      For all of these reasons, we conclude that subsections (e) and (f) of Utah Code section 78B-6-120(1) each identify a separate means of perfecting parental rights and that the consent of an unmarried biological father complying with subsection (e) is thus required for adoption regardless of whether he has complied with the paternity provisions. We therefore reverse the trial court's determination that Father's consent was not required.

_____