**Kathleen M. THOMAS, et al.,
Plaintiffs and Appellees,**

v.

**Jamis M. JOHNSON, aka Jamis Johnson, Defendant and Appellant.**

No. 890385–CA.

Court of Appeals of Utah.

Nov. 13, 1990.

A. Paul Schwenke, Salt Lake City, for defendant and appellant.

Gary Weston and Jay R. Mohlman, Nielsen & Senior, Salt Lake City, for plaintiffs and appellees.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Jamis M. Johnson appeals from a deficiency judgment entered against him after a trust deed foreclosure. We affirm and remand to the district court for a determination of attorney fees incurred on appeal by the appellees, collectively referred to here as Thomas.

This action arises out of Johnson's purchase of a Salt Lake City residence from Thomas in September 1984 for $33,000. Johnson made an $8,000 down payment and executed a $25,000 note secured by a deed of trust on the property. After Johnson defaulted on his note payments in the spring of 1987, the trustee commenced foreclosure proceedings in accordance with the relevant statute, Utah Code Ann. §§ 57-1-23 to -29 (1990). The trustee's sale took place, as scheduled, on November 24, 1987. Although it is undisputed that Johnson received proper notice of the trustee's sale, he did not attend or submit a bid for the property at the sale.

Kathleen Thomas, acting for all the appellees, was the only bidder at the trustee's sale. Instead of offering a specific dollar amount for the property, she bid "the fair market value" of the property as of the date of sale. The trustee accepted this bid and delivered a trust deed conveying the property to appellees.

Shortly thereafter, Thomas listed the property for sale. After a physical inspection of the premises in mid-December, the property was appraised by Thomas's expert, Paul Maritsas, at $21,750 as of November 24, 1987. Thomas instituted this deficiency action in early 1988 seeking a judgment for the outstanding indebtedness of $27,460.15, plus costs and back taxes,

minus the fair market value of the property on the date of sale (alleged by Thomas to be $21,750), in accordance with Utah Code Ann. § 57-1-32 (1990). The property eventually was resold by Thomas for $21,-500 in July 1988.

At the December 1988 bench trial, the trial court ruled that Thomas's failure to make a dollar-figure bid did not render the trustee's sale invalid as a matter of law. The only significant disputed factual issue was the fair market value of the property on November 24, 1987. Maritsas testified about the basis for and the method used in reaching his $21,750 appraisal. Johnson's expert appraiser, Richard Koplin, who had not inspected the property until July 1988, testified that the fair market value of the property at the time of the trustee's sale was $31,800. The trial court refused to allow Johnson to testify about the price he resold the subject property for in September 1985, more than two years before the trustee's sale, but Johnson was allowed to testify that the property's fair market value on November 24, 1987, was between $30,000 and $35,000. The trial court nonetheless found that the fair market value of the property was $21,750 on the date of sale.

In his appeal, Johnson asserts several reasons why the trustee's sale was invalid as a matter of law. We find it necessary to address only his contention that he is entitled to have the trustee's sale set aside because it was not conducted in compliance with the requirements of section 57-1-27(1). That section provides that, on the date designated in the notice of trustee's sale, the trustee "shall sell the property at public auction to the highest bidder." Johnson argues that because Thomas's bid was for "fair market value" instead of a set dollar amount, it was not a bid at all and, therefore, the trustee could not and did not "sell" the property to her as the highest bidder. Because no bid was received by the trustee at the trustee's sale on November 24, 1987, he contends, section 57-1-27(2) required the trustee to either postpone the sale for up to seventy-two hours or, if a longer postponement was required, cancel the sale and renotice it for a later date.

■ In considering Johnson's challenge to the validity of the trustee's sale, we note that the statutes regulating nonjudicial sales of property secured by trust deeds are intended to protect the interests of the trustor/debtor in having the property sold for a fair price. *See Concepts, Inc. v. First Sec. Realty Servs., Inc.*, 743 P.2d 1158, 1159 (Utah 1987); *Occidental/Nebraska Fed. Savings Bank v. Mehr*, 791 P.2d 217 (Utah Ct.App.1990). However, the remedy of setting aside a trustee's sale is appropriate only in cases which reach unjust extremes. *Concepts, Inc.*, 743 P.2d at 1159. The party alleging an irregularity in a trustee's sale has the burden of proving his contention. *Id.*

Johnson cites us to no authority, other than the dictionary, for the proposition that a bid is not a bid unless it involves a fixed-dollar amount. Section 57-1-27(1) states that each bid at the trustee's sale constitutes an irrevocable offer. Thus, once accepted by the trustee, there is a binding contract of sale between the parties. The accepted bid is to be paid as directed by the trustee, Utah Code Ann. § 57-1-28(1) (1990), subject to any restrictions in the trust deed.[1]

■ Here, Kathleen Thomas was the only potential buyer present at the trustee's sale. Although she testified that she would have been willing to bid up to $26,-000 if there had been a competing bidder at the trustee's sale, there was no such competing bidder. Under these circumstances,

---

1. Johnson also argues briefly that the sale is invalid because the trustee did not require the bid to be "payable in lawful money of the United States at the time of sale," as allegedly instructed in the trust deed. The trust deed, however, was not offered or admitted into evidence at trial. In any event, we believe that a credit bid by the beneficiary of a trust deed is a bid "payable in lawful money of the United States," even though the trustee does not go through the meaningless motions of taking, with one hand, actual money from a person as the highest bidder at the trust sale and then returning the money with the other hand to the same person as the trust deed beneficiary.

we conclude that Thomas's offer of "fair market value" for the property was the equivalent of a fixed-dollar offer and was therefore a bid for purposes of section 57–1–27(1). As the only bid, it was also the highest bid, which the trustee was required by the statute to accept. When the trustee accepted that bid and received payment from Thomas in the form of Johnson's indebtedness up to the fair market value on the date of the trustee's sale, the sale of the property was complete. Thus, the trustee was not obliged by section 57–1–28(2) to postpone, cancel, or renotice the sale.

 Johnson complains on appeal that his interests were unfairly impaired by the trustee's sale of the property at the then undetermined fair market value. Because he did not learn that Thomas's appraiser had valued the property at $21,750 until the end of February 1988, he claims he was prevented from getting an appraisal of the property close to the time of the sale.

We can find no evidence that Johnson's interests were sacrificed by the trustee's action at the November 1987 sale. Johnson could have obtained an appraisal of the property at any time on or around November 24, 1987, but did not bother to do so. Even after he learned of the valuation arrived at by Thomas's expert, he waited another five months to hire his own appraiser, Koplin, to inspect and value the property. Koplin testified at trial that his appraisal of the property as having a fair market value of $31,800 was as of the date of the trustee's sale. His valuation opinion was rejected by the trial court primarily because he admitted not knowing the condition of the property at the time of the sale and not entering the attic of the home, where severe structural problems were evident. Furthermore, Johnson could have attended the trustee's sale and made a fixed-dollar bid to protect his own interests, but he chose not to because he believed that the fair market value of the property was greater than his indebtedness. Because no other bidders attended the sale, Thomas's bid did not scare off other potential purchasers of the property to Johnson's prejudice. Any injury to Johnson's interests resulted from his own inaction and imprudent judgment, not from any noncompliance with the statutes governing nonjudicial foreclosure sales. We therefore conclude that the trial court properly declined to set aside the trustee's sale in this case.

In light of Johnson's failure to demonstrate any clear error, *see* Utah R.Civ.P. 52, we also reject Johnson's challenge to the trial court's finding that the fair market value of the property on the date of the trustee's sale was $21,750. The other issues raised by Johnson are completely meritless and we deem it unnecessary to address them further. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989).

The judgment of the trial court is affirmed, and the case is remanded for the trial court's determination and award of reasonable attorney fees, authorized by section 57–1–32, that appellees have incurred on appeal.

BILLINGS and ORME, JJ., concur.