**2013 UT App 60**

# THE UTAH COURT OF APPEALS

ANTION FINANCIAL, LC,

*Plaintiff and Appellee,*

*v.*

STEVE CHRISTENSEN,

*Defendant and Appellant.*

Opinion
No. 20100750-CA
Filed March 7, 2013

Third District, Salt Lake Department
The Honorable Denise P. Lindberg
No. 090900044

Brennan H. Moss and Kurt O. Hawes,
Attorneys for Appellant
L. Miles LeBaron and Alisa J. Rogers,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion,
in which JUDGES WILLIAM A. THORNE JR.
and J. FREDERIC VOROS JR. concurred.

CHRISTIANSEN, Judge:

¶1     Defendant Steve Christensen appeals the trial court's ruling, following a bench trial, in favor of Plaintiff Antion Financial, LC (Antion) on Antion's breach of contract action. Our resolution of the issues on appeal rests on our interpretation of Utah Code section 57-1-27, which governs the public sale of property under a

trust deed. *See* Utah Code Ann. § 57-1-27(1) (LexisNexis 2010). We affirm in part, reverse in part, and remand for further proceedings.

BACKGROUND[1]

¶2     This appeal arises from a foreclosure action. A purchaser financed the construction of a home through America West Bank. The loan was evidenced by a promissory note and secured by a trust deed on the property. After the purchaser defaulted on the loan, Antion became the Bank's successor in interest to the promissory note and the beneficiary under the trust deed. Antion held a public foreclosure auction to sell the property on June 3, 2008. Antion's attorney acted as the agent of the trustee. The trustee prepared a bid information sheet, which instructed bidders that the auction and sale would be performed pursuant to Utah Code section 57-1-27, namely that the property would be sold to the highest bidder and that each bid would be considered an irrevocable offer to purchase. The other terms of sale provided that the highest bidder would pay 25% of the bid by close of business on the day of the auction, which amount would be non-refundable, and that the remaining bid balance would be due within seven days. Prior to the auction, the trustee's agent read the bid information sheet aloud to the bidders. The trustee's agent then initialed the sheet, indicating that he had read it, and each of the bidders signed and dated the document.

¶3     An individual, acting either acting on his own behalf or on the purchaser's behalf, made the highest bid at $1,510,000. Christensen made the next highest bid at $1,500,002. Antion, the

---

1. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *Alvey Dev. Corp. v. Mackelprang*, 2002 UT App 220, ¶ 2, 51 P.3d 45 (citation and internal quotation marks omitted).

third highest bidder, entered a credit bid of $1,500,001. On the same day as the auction, but after the sale, the individual who made the $1,510,000 bid attempted to negotiate more favorable settlement terms than those provided on the bid information sheet and Antion attempted to accommodate him, but the two parties were unable to agree on terms. The individual with the $1,510,000 bid thereafter failed to make the required initial payment on his bid.

¶4     In a telephone conference on June 5, 2008, between the trustee and the other bidders, including Christensen, the trustee restated the original sale terms from the bid information sheet and informed all of the bidders that $1,510,000 had been the highest bid, that the required initial payment had not been made, and that pursuant to section 57-1-27 and the sale terms, the trustee had the option to sell the property to the next highest bidder. The trustee then asked Christensen whether he still stood by his bid, Christensen stated that he did and confirmed his offer, and the trustee reiterated some of the sale terms from the bid information sheet. However, Christensen failed to comply with the terms of sale. Because of Christensen's failure to timely perform, the trustee announced the end of the public sale, and Antion became the winning bidder as a result of its credit bid. Christensen attempted to negotiate with the trustee to purchase the property, but he and the trustee never reached an agreement. Antion sold the property for $1,568,206 approximately six months later. After deducting the expenses of the sale, Antion received $1,413,845 from the sale. The parties agreed that on the day of the auction, the property appraised for $1,500,000.

¶5     Antion sued Christensen for breach of contract, breach of covenant of good faith and fair dealing, and specific performance.[2]

---

2. Antion also sued the purchaser and the highest bidder of $1,510,000. In its findings of fact, conclusions of law, and order, the trial court noted that it had orally granted Antion's motion to

(continued...)

After a bench trial in May 2009, the trial court first concluded that the bid information sheet prepared for the sale of the property satisfied the statute of frauds. *See* Utah Code Ann. § 25-5-9 (LexisNexis 2007) ("Every instrument required by the provisions of this chapter to be subscribed by any party may be subscribed by the lawful agent of such party."). Specifically, the trustee prepared the bid information sheet, and the trustee's agent, who conducted the sale, printed his name on and initialed the sheet on June 3, the day of the sale.

¶6     After the highest bidder's failure to perform, the trustee elected to "sell the property to the next highest bidder"—Christensen—pursuant to section 57-1-27(1)(a)(ii). *See id.* § 57-1-27(1)(a)(ii) (LexisNexis 2010). The trial court concluded that Christensen, as the next highest bidder after the $1,510,000 bid, made an "irrevocable offer" to purchase the property pursuant to section 57-1-27(1)(a) and was therefore bound by his bid. *See id.* § 57-1-27(1)(a).

¶7     The trial court next concluded that on June 5, the day that the trustee informed the other bidders that the highest bidder of $1,510,000 had failed to perform, Christensen "reaffirmed his offer" and the trustee accepted the offer by restating the sale terms, thereby creating an enforceable contract. The court concluded that the continuing negotiations between the trustee and Christensen after June 5 concerning Christensen's purchase of the property took place with the trustee acting not as trustee, but rather as Antion's representative. That negotiation never resolved, and when

---

2. (...continued)
dismiss these defendants "due to their filing for bankruptcy." However, our review of the record reveals that the trial court entered judgment against the highest bidder on April 28, 2010, in the amount of $110,000, indicating that he was not dismissed from the action.

Christensen refused to pay his bid amount, he breached his contract with the trustee.

¶8    In calculating Antion's damages, the trial court interpreted Utah Code section 57-1-27, which states, "[A] bidder refusing to pay the bid price is liable for any loss occasioned by the refusal, including interest, costs, and trustee's and reasonable attorneys' fees." *Id.* § 57-1-27(1)(b). The trial court first determined that Antion was entitled to accrued interest at the statutory interest rate of 10% per year pursuant to Utah Code section 15-1-1 and calculated the amount of interest from the date Christensen's payments should have been made to the date of Antion's eventual sale of the property. That totaled $85,668. The court added that $85,668 amount to Christensen's bid of $1,500,002, for a total of $1,585,670. From that total, the court then subtracted $1,413,845, the net amount Antion realized at the eventual sale of the property, to conclude that Antion was damaged in the amount of $171,825. Additionally, the court calculated interest for the days between the date of eventual sale and the date of trial and determined that Antion's total damages equaled $196,885. Last, the court awarded attorney fees in the amount of $14,706 as provided by the statute.

ISSUES AND STANDARD OF REVIEW

¶9    Christensen challenges the trial court's interpretation of section 57-1-27 and resulting conclusions of law regarding (1) his liability as the next highest bidder at the public foreclosure auction after he refused to perform on his bid, (2) calculation of Antion's damages, and (3) the award of attorney fees. This court "review[s] a trial court's interpretation of statutory and case law for correctness, affording no deference to the trial court's ruling." *Property Located at 2793 S. 3095 W., W. Valley City v. Munford*, 2000 UT App 116, ¶ 6, 1 P.3d 1116. This court also reviews "the measure used to calculate damages" as a question of law. *Traco Steel Erectors, Inc. v. Comtrol, Inc.*, 2009 UT 81, ¶ 18, 222 P.3d 1164. "Whether attorney fees are recoverable in an action is a question of law,

which we review for correctness." *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998). Additionally, "we point out that because the parties do not challenge the trial court's lengthy findings of fact, we accept these findings as true in our analysis on appeal." *d'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶ 24, 147 P.3d 515.

## ANALYSIS

### I. Christensen Is Liable Under Utah Code Section 57-1-27.

¶10    In this appeal we are asked to interpret Utah Code section 57-1-27. We determine that Christensen's next highest bid in the foreclosure sale was irrevocable only until the trustee accepted the highest bid and that, at that point, Christensen was therefore not liable for refusing to perform on his bid. However, we conclude that Christensen nonetheless became liable when he resubmitted his bid. Christensen was therefore responsible to Antion for any loss occasioned by his refusal to perform.

A. As the Next Highest Bidder, Christensen Is Not Immediately Liable Under Utah Code Section 57-1-27.

¶11    Utah Code section 57-1-27(1) provides,

> (a) On the date and at the time and place designated in the notice of sale, the trustee or the attorney for the trustee shall sell the property at public auction *to the highest bidder*. The trustee, or the attorney for the trustee, may conduct the sale and act as the auctioneer. The trustor, or the trustor's successor in interest, if present at the sale, may direct the order in which the trust property shall be sold, if the property consists of several known lots or parcels which can be sold separately. The trustee or attorney for the trustee shall follow these directions. Any person, including the beneficiary or trustee, may bid at the

sale. The trustee may bid for the beneficiary. *Each bid is considered an irrevocable offer. If the highest bidder refuses to pay the amount bid by the highest bidder for the property*, the trustee, or the attorney for the trustee, shall either:

(i) renotice the sale in the same manner as notice of the original sale is required to be given; or

(ii) *sell the property to the next highest bidder*.

(b) *A bidder refusing to pay the bid price is liable for any loss occasioned by the refusal*, including interest, costs, and trustee's and reasonable attorneys' fees. The trustee or the attorney for the trustee may thereafter reject any other bid of that person for the property.

Utah Code Ann. § 57-1-27(1) (LexisNexis 2010) (emphases added).

¶12    Christensen argues that the trial court erred in determining that he was liable under section 57-1-27.[3] He asserts that only the highest bidder is subject to liability under section 57-1-27(1)(a) and that, therefore, as the next highest bidder, he was not subject to liability. Christensen states that even if all bids at a foreclosure sale are considered "irrevocable bid[s]" under section 57-1-27(1)(a), the trustee rejected Christensen's bid and all of the other lower bids when he accepted the winning bid of $1,510,000. Thus, Christensen

---

3. Christensen did not argue below as ardently he does on appeal that the trustee's acceptance of the $1,510,000 bid constituted a rejection of his own bid. In fact, his argument that his offer was rejected and that he was therefore no longer liable under the statute as the next highest bidder was conflated with his next argument on appeal that he did not later resubmit his bid. As a result, the trial court's ruling did not focus on how the acceptance of a higher bid might affect the lower bids.

argues, his bid was irrevocable only until the trustee selected the highest bid; thereafter, his bid became revocable and he was no longer bound under the contract to purchase the property.

¶13   In support of his position, Christensen argues that this court should interpret section 57-1-27 in harmony with the surrounding statutory sections and provisions and determine that the legislature clearly intended "to hold [only] the successful highest bidder in a public auction liable for failure to pay their bid[s]." He argues that the provision relating to the bid price in the statute, i.e., "[a] bidder refusing to pay the *bid price* is liable for any loss occasioned by the refusal," Utah Code Ann. § 57-1-27(1)(b) (emphasis added), must only apply "if the highest bidder refuses to pay *the amount bid by the highest bidder* for the property," *id.* § 57-1-27(1)(a) (emphasis added). Therefore, he asserts, the language stating that "a bidder refusing to pay the bid price is liable for any loss occasioned by the refusal, including interest, costs, and trustee's and reasonable attorneys' fees," *id.* § 57-1-27(1)(b), applies only to the highest bidder. He also insists that the legislature clearly intended to bind only the highest bidder in a trustee's sale; otherwise it would have clarified that *each* bidder could be liable instead of "[*a*] *bidder refusing to pay.*" *See id.* (emphasis added). According to Christensen, if the statute meant that each bid made at a foreclosure sale was to be considered an irrevocable obligation to purchase the property, as the trial court determined, then such action would "encourage trustees to select bids that create situations most favorable to the trustee" and would also "impose[] potential liability on every bidder at a trustee's sale simply for having placed a bid."

¶14   Below and on appeal, Christensen relies on California's equivalent public auction statute. *See* Cal. Civ. Code § 2924h(a) (West 2005) ("Each and every bid made by a bidder at a trustee sale under a power of sale contained in a deed of trust or mortgage shall be deemed to be an irrevocable offer by that bidder to purchase the property being sold by the trustee under the power of sale for the amount of the bid. Any second or subsequent bid by

the same bidder or any other bidder for a higher amount shall be a cancellation of the prior bid."). Although Christensen acknowledges that Utah Code section 57-1-27(1)(a) omits some of the crucial language of the California statute, he argues that the California statute is still illustrative for its articulation of basic contract principles. Christensen argues that under basic contract principles, when the trustee accepted the highest bid, the acceptance of that bid was a manifestation of the trustee's intent to reject Christensen's bid and all other lower bids. Christensen further argues that because the trustee has a choice between renoticing the sale or selling the property to the next highest bidder, no mutual obligation exists.

¶15    Antion argues on appeal that section 57-1-27 unambiguously provides that every bid is irrevocable. According to Antion's reading of the statute, in the event that the highest bidder refuses to pay the amount bid, the trustee can elect to sell the property to the next highest bidder because every bid made at the trustee's sale is irrevocable. Were it not so, Antion argues, the statute would state, *"[T]he highest bidder* refusing to pay the bid price is liable for any loss occasioned by the refusal," rather than, "*A bidder* refusing to pay the bid price is liable for any loss occasioned by the refusal," Utah Code Ann. § 57-1-27(1)(b) (emphasis added). Antion also argues that, contrary to Christensen's position, the legislature indeed intended to impose liability on every bidder at a trustee's sale simply for having placed a bid. Further, Antion argues that under common law contract principles, the statute treats the bids as irrevocable offers, and as such, those bids are akin to option contracts, which therefore cannot be withdrawn during a stated time or for a reasonable length of time if the open period is unstated. Antion suggests that the two days between the opening bids on June 3 and the telephone conference on June 5 when the trustee restated the sale terms was a reasonable length of time.

¶16    "When interpreting a statute, our goal 'is to give effect to the legislature's intent.'" *Commonwealth Prop. Advocates, LLC v.*

*Mortgage Elec. Registration Sys., Inc.*, 2011 UT App 232, ¶ 12, 263 P.3d 397 (quoting *State v. Harker,* 2010 UT 56, ¶ 12, 240 P.3d 780).

> "To discern legislative intent, we look first to the statute's plain language. Also, when interpreting statutes, [w]e presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning. Additionally, [w]e read the plain language of [a] statute as a whole and interpret its provisions in harmony with other statutes in the same chapter and related chapters. Furthermore, if the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed."

*Id.* (alterations in original) (quoting *Harker*, 2010 UT 56, ¶ 12).

¶17    According to our reading of the plain language contained in section 57-1-27(1), Christensen's next highest bid was irrevocable. *See* Utah Code Ann. § 57-1-27(1)(a) (LexisNexis 2010) ("Each bid is considered an irrevocable offer."). The question then becomes for how long did Christensen's bid remain irrevocable—until the trustee selected the highest bid, thereby rejecting the second highest bid, as Christensen argues, or, because no time period was specified, for a reasonable length of time after the bids were made, as Antion argues.

¶18    Utah law instructs us that "[t]he best evidence of the legislature's intent is the plain language of the statute itself," *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (citation and internal quotation marks omitted), and in this case, we need not look further than the statute's plain language. For guidance, we consider our plain language interpretation of a previous version of section 57-1-27 in *Thomas v. Johnson*, 801 P.2d 186 (Utah Ct. App. 1990). *See generally* Utah Code Ann. § 57-1-7(1) (Michie 1990) ("Any person, including the beneficiary or trustee, may bid at the sale. Each bid is considered an irrevocable offer, and if the purchaser refuses to pay the amount bid by him for the

property sold to him at the sale, the trustee, or the attorney for the trustee, may again sell the property at any time to the highest bidder. The party refusing to pay the bid price is liable for the loss occasioned by the refusal, including interest, costs, and trustee's and reasonable attorneys' fees.").

¶19    In *Thomas*, this court concluded that the only bid at the public auction was necessarily the highest bid and that the trustee was therefore required to accept it. 801 P.2d at 189. We explained, "[E]ach bid at the trustee's sale constitutes an irrevocable offer. Thus, once accepted by the trustee, there is a binding contract of sale between the parties. The accepted bid is to be paid as directed by the trustee . . . subject to any restrictions in the trust deed." *Id.* at 188 (footnote omitted). In other words, a binding contract between the parties at a trustee's sale was created once the trustee accepted the highest bid. *See id.* at 189.

¶20    Our reading of the plain language of the statute, in conjunction with our analysis of a prior version of the statute, leads us to conclude that the legislature intended for the trustee's acceptance of the highest bid to constitute a rejection of all lower bids. Thus, each bid is considered an irrevocable offer, but only until the highest bid has been accepted. At that point, the trustee rejects all of the lower bids. If the highest bidder fails to perform, as occurred in this case, the trustee may either renotice the sale or sell to the next highest bidder who remains willing to purchase at his or her bid price. The next highest bidder, in other words, the original, second highest bidder—here, Christensen—may resubmit his or her offer, which likewise then becomes irrevocable until the trustee accepts it. If the next highest bidder (the original second highest bidder) does not resubmit his or her bid, then the trustee shall sell to the third highest bidder, who would become the next highest bidder. Or, if the next highest bidder (here, the second highest bidder) fails to perform, the trustee shall again have a choice between renoticing the sale or selling to the next highest bidder (the original third highest bidder).

¶21    Here, the trustee accepted the $1,510,000 bid. At that moment of acceptance, the other bids, including Christensen's, became revocable and Christensen was no longer required to participate in the trustee's sale. However, because Christensen then resubmitted his bid and the process began anew, he became liable under section 57-1-27 when he failed to perform.

B. Christensen Resubmitted His Bid and Is Thus Liable Under Utah Code Section 57-1-27.

¶22    Although we determine that Christensen's bid was revocable after the trustee accepted the highest bid of $1,510,000, we conclude that Christensen nonetheless became liable when he resubmitted his bid. The trustee accepted the bid, and Christensen failed to perform.

¶23    The trial court found that, as the next highest bidder, Christensen resubmitted his bid on June 5, the day that the trustee informed the other bidders that the highest bidder of $1,510,000 had failed to perform. In particular, the trial court found that the trustee accepted Christensen's offer by restating the sale terms, thereby creating an enforceable contract between Christensen and the trustee, which Christensen breached by refusing to timely pay his bid amount. We agree with the trial court.

¶24    After the highest bidder of $1,510,000 failed to make his initial payment, the trustee held a telephone conference on June 5, 2008. He informed the remaining bidders that $1,510,000 was the highest bid but that the initial payment had not been made. The trustee restated the sale terms from the bid information sheet and advised the bidders that the trustee could take one of two courses of action pursuant to section 57-1-27—either renotice the sale or sell the property to the next highest bidder. The trustee chose the latter route and asked Christensen whether he stood by his next highest bid. Christensen explicitly stated that he stood by the bid he made on June 3. The trustee then again reiterated the sale terms.

¶25    On appeal, Christensen argues that he did not "confirm[] that the agreement was acceptable under the payment terms" and thus "never consummated the proposed agreement." Christensen maintains that because he thought the highest bid had been accepted and his bid rejected by the trustee, he negotiated additional time to confirm with his mortgage company that the funds would still be immediately available. Christensen testified at trial that he told the trustee he would get back to him after he checked with his mortgage company and, thus, "merely agreed to make an agreement if he could arrange financing." After that, the parties continued to negotiate the terms. Christensen also argues that even if he entered into a contract with the trustee on June 5 by reaffirming his bid of $1,500,002, that bid was subject to a condition precedent, namely that he would first have to arrange financing. Finally, Christensen contends that even if a contract were formed on June 5, it would not have satisfied the statute of frauds.

¶26    The trial court found that Christensen did not agree to stand by his bid subject to acceptable financing. Rather, the trial court found that Christensen stated that he stood by his bid and that the trustee accepted it according to the sale terms, *after* which Christensen added that he would have to confirm his ability to finance it. Moreover, the trial court found that on June 5, Christensen had $750,000 on hand and was prepared to make the initial payment. On appeal, Christensen does not challenge the court's factual findings, and based on Christensen's own characterization of having stood by his bid, we agree with the trial court that Christensen confirmed, or in other words reaffirmed or resubmitted, his offer of $1,500,002 and that the trustee accepted that bid by reiterating the sale terms. The ongoing negotiations between Christensen and the trustee could have resulted in new sale terms, but the negotiations failed; thus, the original sale terms were never modified.

¶27    Christensen next contends that even if the bid information sheet satisfied the statute of frauds, it did so only for the initial highest bid. He asserts that the trustee's agent's initials on the

original bid information sheet did not satisfy the statute of frauds for the resubmission of his bid on June 5 because there was no new separate writing memorializing any agreement between him and the trustee.

¶28　We agree with the trial court that the bid information sheet, with the trustee's agent's name and initials, satisfied the statute of frauds. *See* Utah Code Ann. § 25-5-3 (LexisNexis 2007) ("Every contract for the leasing for a longer period than one year, or for the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing."). And because the terms of sale were the same, we determine that the original bid information sheet indicating the terms of the sale satisfied the statute of frauds concerning the formation of an enforceable contract between the trustee and Christensen. The oral agreement between the two was based on the exact terms as memorialized in writing in the original bid information sheet. In this trustee's sale context, the purpose of the bid sheet is not the same as a trust deed or real estate purchase contract evidencing the sale of property. As we discussed above, section 57-1-27 allows for the trustee to renotice the trustee's sale for property subject to foreclosure. *See id.* § 57-1-27(1)(a)(i) (LexisNexis 2010). Or, if the trustee sells to the next highest bidder, the statute allows for that bidder to reaffirm his or her bid. *See id.* § 57-1-27(1)(b*).* In providing for the next highest bidder to resubmit his or her bid, the statute creates a scenario where the identical bid information sheet utilized in the original trustee sale carries over and provides the required writing to satisfy the statute of frauds. Thus, in a trustee's sale context, as long as the terms of sale remain the same, a bidder information sheet continues to be a written memorialization of the sale of the foreclosed property.

¶29　We conclude that although Christensen, as the next highest bidder, was not bound by his bid, he reaffirmed his offer. The trustee then accepted that offer and Christensen therefore became

liable when he failed to perform. The only remaining question is, because Christensen refused to pay the bid price, how much "loss occasioned by the refusal, including interest, costs, and trustee's and reasonable attorneys' fees" is he liable for? *See id.* § 57-1-27(1)(b).

## II. Antion's Damages

¶30   The trial court interpreted "any loss occasioned by the refusal, including interests [and] costs," *see id.*, to mean the difference between Christensen's bid and the net amount Antion realized from the eventual sale, plus statutory interest. The court then added to that figure interest for the number of days between the eventual sale date and the trial date, for total damages of $196,885.

¶31   At its most basic level, the parties' dispute over the calculation of Antion's damages comes down to whether the trial court erred by not calculating Antion's damages as the difference between Christensen's bid price and the fair market value of the property on the date of the credit sale, or if the trial court instead correctly measured damages in the amount it would take to put Antion back in the position it would have been in had Christensen performed. We find Christensen's argument compelling.

¶32   Christensen argues that Utah Code section 57-1-27(1)(b) should be harmonized with the trust deed deficiency statute. *See id.* § 57-1-32 ("[A]n action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security . . . . Before rendering judgment, the court shall find the fair market value of the property at the date of sale. The court may not render judgment for more than the amount by which the amount of the indebtedness with interest, costs, and expenses of sale, including trustee's and attorney's fees, exceeds the fair market value of the property as of the date of the sale."). Accordingly, the result here would be the difference between Christensen's $1,500,002 bid and the fair market value of the

property—$1,500,000, which is two dollars. Antion responds that the court need not look to the deficiency statute but should instead interpret section 57-1-27 according to its plain language.[4]

¶33    Because section 57-1-27 is not more specific concerning the determination of the amount of "any loss occasioned by the refusal," we look to the deficiency statute to discern the legislature's intent. *See Capital Assets Fin. Servs. v. Jordanelle Dev., LLC*, 2010 UT App 385, ¶ 5, 247 P.3d 411 ("'The primary purpose of interpreting a statute is to give effect to the legislature's intent. The best evidence of that intent is found in the plain language of the statute. To determine the meaning of the plain language, we examine the statute in harmony with other statutes in the same chapter and related chapters.'" (quoting *Jaques v. Midway Auto Plaza, Inc.*, 2010 UT 54, ¶ 14, 240 P.3d 769)).

¶34    In a previous analysis of the deficiency statute, this court has summarized section 57-1-32 as "limit[ing] the deficiency judgment

---

4. Antion also contends that Christensen did not preserve his argument on appeal concerning the deficiency statute or his argument that the trial court incorrectly awarded Antion special damages. After the close of evidence at the trial, the trial court invited counsel to submit briefs containing their closing arguments. In his closing argument brief, Christensen specifically raised the issue of how the court should interpret "any loss" in section 57-1-27. Though it is true that Christensen did not refer the court specifically to section 57-1-32, we find that his reasoning for the calculation as described above was "sufficiently . . . raised to a level of consciousness such that the trial judge . . . consider[ed] it." *Weiser v. Union Pac. R.R. Co.*, 2010 UT 4, ¶ 14, 247 P.3d 357 (citation and internal quotation marks omitted). We note, however, that our resolution of the amount of damages makes it unnecessary for us to reach the general-versus-special-damages issue raised by Christensen on appeal, which we agree, was not preserved before the trial court.

obtained after a nonjudicial foreclosure sale to the amount by which the total secured indebtedness exceeds the fair market value of the property," *Id.* ¶ 6. We explained that the purpose of the statute "'is to protect the debtor, who in a non-judicial foreclosure has no right of redemption, from a creditor who could purchase the property at the sale for a low price and then hold the debtor liable for a large deficiency.'" *Id.* ¶ 8 (quoting *City Consumer Servs., Inc. v. Peters*, 815 P.2d 234, 238 (Utah 1991)).

¶35    The parties agree that the fair market value of the property is $1,500,000. The measure of Antion's loss is the difference between Christensen's bid of $1,500,002 and the amount for which the property actually sold, so long as the sale price exceeds the fair market value. Here, the sale price, represented by Antion's credit bid, was $1,500,001, an amount that exceeded the agreed-upon fair market value. Accordingly, Antion's "loss occasioned by the refusal" of Christensen to honor his bid was one dollar. *See* Utah Code Ann. 857-1-27(1)(b)(LexisNexis 2010). "A bidder refusing to pay the bid price is liable for *any loss* occasioned by the refusal, including interest, costs, and trustee's and reasonable attorneys' fees." *Id.* (emphasis added). Thus, "any loss occasioned by [Christensen's] refusal" is one dollar, plus any incidental costs that Antion may have incurred. *See id.*

¶36    Our conclusion is consistent with Antion's position that it should be put back in the same position it was in before Christensen breached the agreement. *See, e.g.*, *TruGreen Cos., LLC v. Mower Bros., Inc.*, 2008 UT 81, ¶ 10, 199 P.3d 929 ("The purpose of these damages is to compensate the nonbreaching party 'for actual injury sustained, so that [the nonbreaching party] may be restored, as nearly as possible, to the position [it] was in prior to the injury.'" (quoting *Mahmood v. Ross*, 1999 UT 104, ¶ 19, 990 P.2d 933) (alterations in original)). Antion bought the property from the trustee. That sale established Antion's loss for purposes of section 57-1-27(1)(b). The fact that, six months later, Antion sold the property at a loss is not relevant to the calculation. Nor is Christensen accountable for Antion's decision to act as a purchaser

in addition to its role as a lender. Accordingly, Antion's "loss occasioned by the refusal" of Christensen to honor his bid is one dollar, plus any incidental costs that Antion may have incurred.

III. Attorney Fees

¶37    Christensen argues that the trial court erred when it awarded Antion attorney fees pursuant to Utah Code section 57-1-27(1)(b). *See* Utah Code Ann. § 57-1-27(1)(b) ("A bidder refusing to pay the bid price is liable for *any loss* occasioned by the refusal, including interest, costs, and trustee's and reasonable attorneys' fees." (emphasis added)). Christensen interprets the statute to mean that a bidder is only liable for the loss, including costs and attorney fees, incurred from his refusal to purchase the property and not for attorney fees incurred in pursuing damages associated with that loss. We agree that the statute's plain language leaves no doubt that the legislature intended to award only those attorney fees and costs, "occasioned by the refusal" of the winning bidder to perform. *See id.* The intent of the statute is not to award attorney fees incurred in litigating those damages. We determine that Antion was damaged in the amount of only one dollar by Christensen's failure to perform. Accordingly, we reverse the trial court's attorney fee award and remand with instructions to recalculate the award based on this court's damages calculation of one dollar.

CONCLUSION

¶38    Christensen's next highest bid was revocable upon the trustee's acceptance of the highest bid. However, after the highest bidder failed to perform, Christensen reaffirmed his bid, which the trustee accepted. Christensen thereafter failed to perform and is liable for any loss associated with his failure to perform. We ultimately conclude that Antion's loss occasioned by Christensen's subsequent failure to perform was only one dollar, plus any incidental costs and fees. Thus, while we affirm the trial court's

ruling, we reverse its award of damages and remand for the calculation of "costs, and trustee's and reasonable attorneys' fees" incurred by Antion based on a damages award of one dollar.

————————————